WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SPUS8 Dakota LP, et al., | No. CV-19-05477-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| KNR Contractors LLC, et al., | |
| Defendants. | |

This case concerns missing materials for a renovation project at a large apartment complex. Plaintiffs SPUS8 Dakota, LP and SPUS8 Pinnacle, LP (collectively, "SPUS8") have moved for summary judgement on their breach of contract claim against defendant KNR Contractors, LLC, a Texas LLC, and for partial summary judgment regarding the personal liability of defendant John Keener, a managing member of KNR Contractors, LLC.[1] (Doc. 108 at 2.) The Motion (Doc. 108) will be granted in part and denied in part.[2]

**I.   FACTUAL BACKGROUND**

The following facts derive from the Motion briefing. (Docs. 108–11, 117–21, 131–32.) SPUS8 owns real estate, specifically, multi-family apartments in Scottsdale, Arizona, commonly known as "Kota." (Doc. 117 at 2.) SPUS8 contracted with KNR to renovate Kota (collectively, the "renovation contracts"). (Doc. 108 at 2–3.) The

---

[1] KNR Contractors, LLC and John Keener are referred to collectively as "KNR" throughout unless individually referenced.
[2] Both parties have submitted legal memoranda, and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

renovation contracts were signed by Crystal Keener, John Keener's wife, and sent to him on September 17, 2018. (Doc. 108 at 2–3; Doc. 117 at 3.) These contracts set a commencement date of September 10, 2018, and a completion date of September 10, 2022. (Doc. 117 at 3.) The renovation contracts were lump sum contracts totaling over $11.2 million. (*Id.*) Both contracts outline four phases over the four years of the contract. (Doc. 108 at 3; Doc. 117 at 3.) Each phase "provides a detailed breakdown regarding the specific type and amount of renovation materials KNR was to procure for each phase of the renovation Project, as well as the corresponding cost." (Doc. 108 at 3.) But the contracts did not specify a specific time for each individual unit to be renovated. (Doc. 117 at 3.) The parties did not know which apartments would be available to be renovated at a given time, "such facts were not known and were dependent on the expiration [or] non-renewal of apartment leases." (*Id.*) SPUS8 paid a total of $1,428,700.72 on October 2, 2018, to KNR for the first phase of renovation materials.[3] (Doc. 108 at 3.) While SPSU8 was led to believe that KNR sourced all of the renovation materials from Chinese suppliers, Keener had actually subcontracted with another party in this lawsuit, John Oddonetto and Oddonetto Granite & Marble, LLC (collectively, "Oddonetto"), for granite countertops and sinks. (*Id.*) KNR stored many of the renovation materials either at the Kota Project site or at an off-site warehouse. (*Id.*)

A few months after contracting with KNR, SPUS8 began to suspect that some product it had ordered was missing. (*See id.* at 3–4.) After KNR failed to assuage SPUS8's fears, disputes regarding payment arose between the parties. (*Id.*) On April 29, 2019, KNR cancelled the renovation contracts as a result of this conflict.[4] ( *See Id.* at 3–4; Doc. 110 at 3 ¶ 9.) In July 2019, after terminating the contracts, the renovation materials remained in KNR's exclusive control, and a final joint inventory of the stored renovation

---

[3] SPUS8's Motion lists the total price paid at $1,428,610.72 without citation. (Doc. 108 at 3.) But SPSU8 also asserts that it paid $712, 205.36 and $716, 495.36 for its north and south property renovations, respectively. (*Id.*) Because SPUS8 fails to provide a citation for this total, the Court assumes without deciding that SPUS8's lower amount for the total first phase renovation materials is an arithmetic error.

[4] (*See also*, Doc. 45 at 3 ¶ 18 ("KNR affirmatively allege that it stopped work and cancelled the contracts due to a material payment dispute with Plaintiffs.")

materials was conducted. (Doc. 108 at 4.) During the inventory, it was confirmed that all of the granite countertops and sinks were missing. (*Id.*) In total, SPUS8 paid KNR $566,600 for the missing materials. (*Id.*)

As these events unfolded, KNR's legal status loomed in the background. (*See id.* at 5.) On September 21, 2018, KNR Contractors LLC, a Texas LLC, had its right to transact business forfeited by the state of Texas. (*Id.*) But this was not the first time KNR had had this right forfeited. (*See id.*) In fact, less than a year earlier on September 29, 2017, KNR's "right to transact business in Texas [had been] forfeited . . . for failure to satisfy franchise tax requirements." (*Id.*) But, soon after, "KNR revived its right to transact business on November 9, 2017 and [KNR's] due date for the 2018 franchise tax report was May 15, 2018." (*Id.*) But, KNR did not file that report. (*See id.*) And so, "KNR, once again, had its right to transact business in Texas forfeited on September 21, 2018 for failure to satisfy franchise tax requirements." (*Id.*) Although the parties dispute when, KNR was on notice because "KNR was notified by the Texas Secretary of State that its right to transact business would be forfeited." (*Id.*; *see* Doc. 118 at 4.) The renovation contracts were funded by SPUS8 on October 2, 2018. (Doc. 108 at 5.) SPUS8 claims that Defendant John Keener knew of KNR Contractors LLC's pending forfeiture and argues that he is personally liable for the missing materials. (*Id.*)

## II.     LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255; *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th

1    Cir. 1994) ("The court must not weigh the evidence or determine the truth of the matters
2    asserted but only determine whether there is a genuine issue for trial."). That said,
3    "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted
4    by the record, so that no reasonable jury could believe it, a court should not adopt that
5    version of the facts for purposes of ruling on a motion for summary judgment." *Scott v.*
6    *Harris*, 550 U.S. 372, 380 (2007).

7    "[A] party seeking summary judgment always bears the initial responsibility of
8    informing the district court of the basis for its motion, and identifying those portions of
9    [the record] which it believes demonstrate the absence of a genuine issue of material
10   fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary
11   judgment must "cit[e] to particular parts of materials in the record" establishing a genuine
12   dispute or "show[] that the materials cited do not establish the absence of . . . a genuine
13   dispute." Fed. R. Civ. P. 56(c)(1). This Court has no independent duty "to scour the
14   record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279
15   (9th Cir. 1996) (internal quotations omitted).

16   **III.    DISCUSSION**

17   **A.    Breach of Contract**

18   Contracts consist of an offer, acceptance, consideration, and intent by the parties
19   to be bound. *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1153 (D. Ariz. 2016), *aff'd*, 705 F.
20   App'x 539 (9th Cir. 2017). Generally, when the terms of a lawful contract are clear and
21   unambiguous, "a court must give effect to the contract as written." *Roe v. Austin*, 246
22   Ariz. 21, 26 ¶ 17 (Ct. App. 2018) (citing *Grubb & Ellis Mgmt. Servs., Inc. v. 407417*
23   *B.C., L.L.C.*, 213 Ariz. 83, 86 ¶ 12 (Ct. App. 2006)). "[Q]uestions of contract
24   interpretation . . . are questions of law" which a court may decide on summary judgment.
25   *Fid. Nat'l Title Ins. Co. v. Osborn III Partners LLC*, 250 Ariz. 615, --- ¶ 60 (Ct. App.
26   2021); *e.g.*, *Tritschler v. Allstate Ins. Co.*, 213 Ariz. 505, 510 ¶ 8 (Ct. App. 2006), *as*
27   *corrected* (Dec. 19, 2006). "To bring an action for the breach of the contract, the plaintiff
28   has the burden of proving the existence of the contract, its breach and the resulting

damages." *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 96 ¶ 16 (2013) (citing *Graham v. Asbury*, 112 Ariz. 184, 185 (1975)).

### 1. Breach

SPUS8 argues that no material factual dispute exists over breach. (Doc. 108 at 7; Doc. 131 at 2–3.) SPUS8 asserts that the renovation contracts were valid; that they were between SPUS8 and KNR, not Oddonetto; that the amount paid by SPUS8 for the countertops and sinks is undisputed; and that whether SPUS8 is entitled to the countertops and sinks is undisputed. (Doc. 108 at 7; Doc. 131 at 2–3.) SPUS8 also argues that KNR failed to perform because it did not provide the granite countertops and sinks for the renovation project. (Doc. 108 at 7; Doc. 131 at 2–3.) KNR asserts it had "been performing its other obligations for the renovations of apartment units under the contracts, as admitted by [SPUS8]." (Doc. 117 at 5.) KNR argues that the contracts contemplated SPUS8 paying KNR "a great deal more money for additional products to be used during the 4-year renovation project." (*Id.*)

The Court finds that there is no genuine material question of fact regarding breach. KNR contracted to provide granite countertops and sinks to SPUS8 and failed to fulfill that legal obligation. Thus, the Court will grant summary judgment insofar as the Court finds that KNR breached the renovation contract with SPUS8 for failing to provide countertops and sinks. Having determined that KNR breached, the Court next considers the parties' arguments regarding the amount of damages owed by KNR.

### 2. Damages

"The well-established rule in Arizona is that the damages for breach of contract are those which arise naturally from the breach itself or which may reasonably be supposed to have been within the contemplation of the parties at the time they entered into the contract." *S. Arizona School for Boys, Inc. v. Chery*, 119 Ariz. 277, 280 (Ct. App. 1978). A calculation of damages cannot be speculative. *See Cole v. Atkins*, 69 Ariz. 81, 86 (1949) (holding a party cannot recover "for speculative or remote damages"). SPUS8 seeks summary judgment on its damages claim. (Doc. 108 at 6–7.) But, KNR asserts,

"assessment of 'damages' under these lump sum construction contracts must take into account 'the reasonable cost of construction and completion in accordance with the contract.'" (Doc. 117 at 5.) KNR argues that SPUS8 "ha[s] not presented any proof that [it] suffered any contract 'completion damages' with regard to the $566,[6]00.00 paid to KNR." (*Id.* at 6.) Instead, KNR asserts that SPUS8 admits that the agreement was to pay KNR $11.2 million over four years as leases expired and that the contracts required an initial payment for the entire first phase of the contract, which would only be 25% of the countertops and sinks. (*Id.*) KNR also asserts mitigation and offset defenses. (*Id.* at 6–7.) SPUS8 counters that these arguments are not relevant because there is no dispute that KNR breached regarding the countertops and sinks and KNR's mitigation and offset damages arguments are meritless. (*See* Doc. 131 at 3–7.)

SPUS8 has met its summary judgment burden for establishing the amount of damages KNR owes. The amount it paid for the countertops and sinks—$566,600—is uncontroverted. (Doc. 109 at 4 ¶ 17; Doc. 118 at 4 ¶ 17.) These items were never delivered to SPUS8. That KNR paid Oddonetto to supply the missing countertops and sinks is irrelevant to SPUS8's damage calculation. SPUS8 paid $566,600 for the supplies, the supplies never came, and now SPUS8 wants the money that it paid for those supplies. There can be no argument regarding the damages SPUS8 is claiming in this case because SPUS8 is only seeking damages for the money it paid for the supplies. Furthermore, as explained below, KNR's mitigation and offset damages arguments fail to affect the amount of damages SPSU8 is due.

"A basic principle of the law of damages is that one who claims to have been injured by a breach of contract must use reasonable means to avoid or minimize the damages resulting from the breach." *Next Gen Cap., L.L.C. v. Consumer Lending Assocs., L.L.C.*, 234 Ariz. 9, 12 ¶ 13 (Ct. App. 2013) (citing *W. Pinal Family Health Ctr., Inc. v. McBryde*, 162 Ariz. 546, 548 (Ct. App.1989)). The breaching party "ha[s] the burden of proving that mitigation was reasonably possible but not reasonably attempted." *Id.* (internal quotation omitted).

- 6 -

1  KNR argues that SPUS8 did not even attempt to mitigate damages. (Doc. 117 at 7.) KNR asserts "[SPUS8] had opportunities to obtain free granite countertops and sinks from" Oddonetto, and received a bid from another company which it has not disclosed. (*Id.*) SPUS8 counters that Oddonetto did not offer free countertops. (Doc. 131 at 4–5.) SPUS8 also notes that the second bid, the "cask bid," was "for the purchase and installation of replacement [renovation materials]." (Doc. 131 at 5.) Thus, it argues, any replacement bid would only add to the $566,600 it already paid KNR. (*Id.*)

The Court finds that KNR has failed to prove that mitigation was reasonably possible but not reasonably attempted. SPUS8 claims damages for the money it had already paid to KNR for the countertops and sinks, only. The alternative countertops that SPUS8 could have ordered from Oddonetto were not free. Likewise, the cask bid would have cost SPUS8 money as well. Thus, that Oddonetto was willing to install the countertops and sinks for extra money and that there was an alternate cask bid do not affect the amount SPUS paid KNR for countertops and sinks.

KNR also argues that SPUS8's damages are offset by $120,548.00 for monies SPUS8 owes to KNR. (Doc. 117 at 7.) SPUS8 counters that KNR has filed no crossclaim for the monies owed. (Doc. 131 at 6.) SPUS8 also argues that KNR cannot sue for compensation for monies owed because KNR Contractors was an unlicensed contractor in Arizona. (*Id.* at 6–7.)

In Arizona, unlicensed contractors cannot maintain an action in any court in Arizona for compensation. ARS §§ 32-1101(A)(3)(a)(i); 32-1153. Arizona courts "have repeatedly held that the purpose of § 32–1153 is to protect the public from unscrupulous, unqualified, and financially irresponsible contractors." *Aesthetic Prop. Maint. Inc. v. Capitol Indem. Corp.*, 183 Ariz. 74, 77 (1995). But Arizona courts do not require strict compliance with § 32-1153. *Id.* at 77–78. In some circumstances, substantial compliance with § 32-1153 "can be adequate." *Id.* at 78. For example, in *Aesthetic Property Maintenance*, the court held that a corporation substantially complied with § 32-1153 when it failed to pay its annual fee by paying a late fee, restoring its license "immediately

upon learning of the suspension," and maintaining "its general liability insurance, workers' compensation insurance, and its contractor's license bond while its license was suspended." *Id.*

Here, unlike in *Aesthetic Property Maintenance*, KNR has not even substantially complied with § 32-1153. It is uncontroverted that KNR was never a licensed contractor in Arizona. (*See* Doc. 109 at 6 ¶ 28; Doc. 118 at 5 ¶ 28.) As a matter of law, KNR cannot bring a claim for offset money damages. Therefore, this Court shall award SPUS8 $566,600 in money damages plus pre-judgment and post-judgment interest for KNR's breach of contract.

### B. Keener's Personal Liability for KNR Debts

SPUS8 moves for summary judgment on its claim against John Keener, in his personal capacity, for KNR's debts. (Doc. 108 at 7–11.) The general rule is that members of an LLC are not responsible for the entity's liabilities. Tex. Bus. Orgs. Code §§ 101.113, 101.114. But creditors may sometimes obtain personal liability from members under the commonly known "piercing the corporate veil" approach. KNR is organized as a Texas limited liability company and, as such, the parties seem to agree that Texas law applies to this issue. (*See* Doc. 108 at 7–11; Doc. 117 at 7–9; Doc. 131 at 7–8.) SPUS8 argues that Keener is personally liable under § 171.255(a) of the Texas Tax Code, which states—

> If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. The liability includes liability for any tax or penalty imposed by this chapter on the corporation that becomes due and payable after the date of the forfeiture.

SPUS8 reasons that because KNR forfeited its LLC status, its member, Keener, is liable for the entity's debts. (*See* Doc. 108 at 8–11; Doc. 131 at 7–8.) This includes any

amounts owed to SPUS8. Keener disagrees. He argues that SPUS8's legal theory is foreclosed by the statute's plain language. (Doc. 117 at 8–9.) The Court agrees with Keener.

The best indicator of a statute's meaning, and the intent of the legislature, is the statute's plain language. *Meador v. Aramak Sports & Entertainment Serv. LLC*, --- F. Supp. 3d. ---, 2022 WL 476005 at *11 (D. Ariz. Feb. 16, 2022). The statute squarely provides that the director or officer shall be liable for debt "**that is created or incurred in this state** after the date on which the report, tax, or penalty is due . . . ." Tex. Tax Code § 171.255(a) (emphasis added). The language of the statute indicates the Texas Legislature's intent to apply personal liability only where the debt was incurred in the State of Texas. That this statute is codified in the Texas Tax Code, as opposed to, for example, the Business Organizations code, reinforces this conclusion. *See Spencer v. Benison*, No. 7:16-cv-01334-LSC, 2017 WL 2903203 at * 2 (N.D. Ala. Jul 7, 2017) (citing *Tri-State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 251 (Tex. App. 2005) (stating that § 171.255 "is a revenue measure, the purpose of which is to enforce collection of Texas franchise taxes," which "are taxes on the privilege of transacting business *within Texas*" (emphasis in original))).

All of the debt-incurring conduct alleged by SPUS8 has occurred in Arizona, none in Texas. SPUS8 is not entitled to summary judgment on this theory.

Besides its Texas Tax Code § 171.255(a) argument, SPUS8 argues that the Court should disregard the corporate entity because KNR failed to register with the Arizona Corporation Commission or with the Arizona Registrar of Contractors. (Doc. 108 at 10–11.) SPUS8 cites no authority to support this theory and the Court rejects it.

Plaintiffs' piercing the corporate veil claim for relief in Count X of the Fourth Amended Complaint fails as a matter of law. Had John Keener, Crystal Keener, and KNR Contractors, LLC moved for summary judgment on this ground, the Court would have granted summary judgment in their favor on this issue. Because they did not move for summary judgment on this issue, pursuant to Rule 56(f), the parties are directed to file

memoranda no longer than 5 pages that (1) respond to the Court's analysis of Texas Tax Code § 171.255 and (2) identify any other flaws or issues with the Court's reasoning. No responses or replies will be permitted.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED granting in part** and **denying in part** SPUS8's Motion for Summary Judgement (Doc. 108).

**IT IS FURTHER ORDERED granting** summary judgement regarding SPUS8's claims that KNR breached its contractual obligation to provide granite countertops and sinks and awarding SPUS8 $566,600 in money damages plus pre-judgment and post-judgment interest. The Motion is denied in all other respects.

**IT IS FURTHER ORDERED vacating** the Motion hearing set for March 4, 2022, at 10:30 AM in Courtroom 504 (Doc. 167) and **denying** the Stipulation to Continue Motion Hearing Scheduled for March 4, 2022, at 10:30 AM (Doc. 170) as **moot**.

**IT IS FURTHER ORDERED** that the parties shall file the memoranda called for above by no later than **March 11, 2022**. No responses or replies are be permitted.

**IT IS FINALLY ORDERED** that KNR's Motion for Summary Judgement (Doc. 146) remains pending. The Clerk of the Court shall not close the case at this time.

Dated this 25th day of February, 2022.

Michael T. Liburdi
United States District Judge