**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SPUS8 Dakota LP, et al., | No. CV-19-05477-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| KNR Contractors LLC, et al., | |
| Defendants. | |

Pending before the Court is Defendant/ Cross-claimant KNR Contractor, LLC's motion for summary judgment against Cross-Defendants Oddonetto Granite & Marble LLC and John Oddonetto.  (Doc. 146.)  For the reasons listed below, the motion is granted in part and denied in part.[1]

## I.        BACKGROUND

The cross-claims at issue here concern a contract dispute between a general contractor, KNR Contractor, LLC ("KNR"), and a subcontractor, Oddonetto Granite & Marble, LLC ("Oddonetto LLC") and John Oddonetto (collectively, "Oddonetto").  The contract dispute involves the subcontractor's obligation to procure, supply, and install granite countertops and sinks for a multi-unit apartment complex renovation project (the "KOTA Project").

### A.        The Uncontroverted Facts

---

[1] Neither party requested oral argument pursuant to LRCiv 7.2, and oral argument will not aid the Court's decision.  *See Partridge v. Reich,* 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

KNR contracted Oddonetto to procure, supply, and install granite countertops and sinks for the KOTA Project. (Doc. 147 ¶ 1; Doc. 160 ¶ 1.) KNR made an initial payment to Oddonetto of $167,126.00. (Doc. 147 ¶ 2; Doc. 160 ¶ 2.) John Oddonetto emailed KNR on March 21, 2019, requesting additional funds to unload a delivery of granite that was in port, and that KNR made a second payment of $78,200.00 on March 29, 2019. (Doc. 147 ¶ 2; Doc. 160 ¶ 2.) The parties disagree about the content and meaning of that email. (Doc. 147 ¶ 2; Doc. 160 ¶ 2.) They agree, however, that the delivery at port that was mentioned in Oddonetto's March 21 email, contained less than 25% of the total order of granite countertops and sinks for the KOTA Project. (Doc. 147 ¶ 3; Doc. 160 ¶ 3.) In October 2019, Plaintiffs SPUS8 Dakota LP, SPUS8 Pinnacle LP (collectively, "Dakota"), and KNR called Oddenetto to take inventory of the granite countertops and sinks, but Oddonetto "did not have any of the granite countertops and sinks" prepared. (Doc. 147 ¶ 4; *see* Doc. 159 ¶ 49–50; Doc. 160 ¶ 4.)

**B.     KNR's Controverted Facts**

KNR maintains that the two payments it made to Oddonetto were for 25% of the total granite countertops and sinks for the KOTA Project. (Doc. 147 ¶¶ 1–2.) The expectation, according to KNR, was that Oddonetto would have 25% of the total materials after the second payment. (*Id.* ¶ 2.) KNR asserts that Oddonetto informed Keener that a "container from China containing all of the granite countertops and sinks was in port but could not be released until full payment was made." (*Id.*) But, according to KNR, in October of 2019, when it wanted to check the inventory, it discovered that Oddonetto "did not have any of the granite countertops . . . and [Oddonetto] did not have the money KNR [had] paid [Oddonetto] to procure them." (*Id.* ¶ 4.) Finally, KNR asserts that Dakota's expert has concluded that KNR committed no fraud in the transactions with Oddonetto and believes that Oddonetto lied to KNR. (*Id.* ¶ 5.)

**C.     Oddonetto's Controverted Facts**

Oddonetto maintains that it provided an estimate to KNR on October 4, 2018. (Doc. 159 ¶ 10.) Oddonetto asserts that the estimate established the material terms of the

agreement between it and KNR, and that KNR accepted those terms.  (*Id.* ¶¶ 11–12.) Oddonetto emphasizes that "[a]ccording to the terms of the contract/ estimate" between it and KNR, and "before any orders are placed for any products or materials regardless of the quantity, the general contractor is required to pay at least a 50 percent deposit and the remaining balance to Oddonetto Granite prior to delivery of any product."  (*Id.* ¶ 15.) Additionally, Oddonetto asserts that the estimate provided (1) "no specific timeframe for delivery of the stone materials for" the KOTA Project; (2) "no requirement that all stone materials had to be ordered at the time of the initial or final payment by KNR to Oddonetto Granite;" and (3) "no requirement that a specific quantity or all of the stone product would be ordered at one time after the payment from KNR."  (*Id.* ¶¶ 13–14, 20; Doc. 158 at 5.) Oddonetto also maintains that the parties agreed that it could acquire the material needed to perform on an as-needed basis due to its limited shop space.  (Doc. 159 ¶¶ 16–18.) Oddonetto also asserts that it had worked with KNR before and was never required to order all of the product for a project at once.  (*Id.* ¶¶ 21–23)

Oddonetto also claims that KNR made representations about the size of the KOTA Project and indicated that Oddonetto should not take on any other work.  (*Id.* ¶ 35.) Oddonetto further asserts that KNR told it to stop work for the KOTA Project while KNR and Dakota settled a payment dispute.  (*Id.* ¶¶ 38–39.)  According to Oddonetto, KNR's stop-work order prevented it from "performing its subcontract with KNR, including being able to finish the product order, fabricate the countertops and sinks, or complete the installation."  (*Id.* ¶ 40.)  Oddonetto maintains that because the KOTA Project was the only project that it was working on, it had to use "some of the funds paid by KNR . . . to support [its] business operations."  (*Id.* ¶¶ 41–42.)  Oddonetto also maintains that it "was always able to perform and willing to complete the work that it had been paid for, including ordering any additional necessary product to complete the work."  (*Id.* ¶ 43.)  Despite this, Oddonetto claims representatives for KNR and Dakota, told it to wait until KNR and Dakota "resolved their dispute. . . ." (*Id.* ¶¶ 48–49.) Finally, Oddonetto asserts that KNR falsely represented itself as a licensed contractor because at "the time it entered into the

1    Construction Contracts with Plaintiffs, KNR was not a licensed contractor in Arizona with

2    the Arizona Registrar of Contractors." (*Id.* ¶¶ 2–3.)

3    **II.    LEGAL STANDARD**

4           Summary judgment is appropriate if the evidence, viewed in the light most favorable

5    to the nonmoving party, here Oddonetto, demonstrates "that there is no genuine dispute as

6    to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

7    Civ. P. 56(a).   A genuine issue of material fact exists if "the evidence is such that a

8    reasonable jury could return a verdict for the nonmoving party," and material facts are

9    those "that might affect the outcome of the suit under the governing law." *Anderson v.*

10   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he

11   evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn

12   in [its] favor." *Id.* at 255; *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131

13   (9th Cir. 1994) ("The court must not weigh the evidence or determine the truth of the

14   matters asserted but only determine whether there is a genuine issue for trial.").   That said,

15   "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted

16   by the record, so that no reasonable jury could believe it, a court should not adopt that

17   version of the facts for purposes of ruling on a motion for summary judgment." *Scott v.*

18   *Harris*, 550 U.S. 372, 380 (2007).

19          "[A] party seeking summary judgment always bears the initial responsibility of

20   informing the district court of the basis for its motion, and identifying those portions of

21   [the record] which it believes demonstrate the absence of a genuine issue of material fact."

22   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment

23   must "cit[e] to particular parts of materials in the record" establishing a genuine dispute or

24   "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed.

25   R. Civ. P. 56(c)(1).

26   **III.   DISCUSSSION**

27          KNR asks the Court to grant summary judgment on four of its cross-claims— (i)

28   breach of contract, (ii) breach of the implied covenant of good faith and fair dealing, (iii)

1   unjust enrichment, and (iv) fraud—and conditional summary judgment on its common law

2   indemnity cross-claim.  (Docs. 146, 168.)  KNR also argues that the Court should grant

3   summary judgment and find John Oddonetto personally liable for the fraud cross-claim.

4   (Doc. 146 at 7.)  Oddonetto counters that summary judgment should not be granted because

5   (1) material facts are in dispute, (2) KNR cannot maintain its cross-claims because it was

6   an unlicensed contractor, (3) the economic loss doctrine bars KNR's fraud cross-claim, and

7   (4) KNR's common law indemnity cross-claim fails due to KNR's negligence.  (Doc. 158.)

8         **A.**    **KNR was an Unlicensed Contractor**

9        The Court has already determined that KNR was "never a licensed contractor" for

10   the purposes of A.R.S. §§ 32-1101(A)(3)(a)(i) and 32-1153.[2]  (Doc. 171 at 8.)  Thus, KNR

11   is unable to "maintain any action in any court" in Arizona for compensation for any act

12   requiring a contractor's license.  A.R.S. § 32-1153.  Oddonetto argues that this bars KNR

13   from pursuing its contract and unjust enrichment cross-claims.  (Doc. 158 at 12.)  KNR

14   argues that it is not barred from maintaining those cross-claims because the issue in this

15   case "is payment for the purchase of product [or] materials from a supplier," which can be

16   done without a contracting license.  (Doc. 168 at 4.)

17        As previously explained in this Court's order, "'Arizona courts 'have repeatedly

18   held that the purpose of § 32–1153 is to protect the public from unscrupulous, unqualified,

19   and financially irresponsible contractors.'"  (Doc. 171 at 7 (quoting *Aesthetic Prop. Maint.*

20   *Inc. v. Capitol Indem. Corp.*, 183 Ariz. 74, 77 (1995)).)

21        Part of a general contractor's role is to pay for product, labor, or materials from a

22   supplier or subcontractor in order to complete a construction job.  *See* A.R.S. § 32-

23   1101(A)(3)(b) ("'Contractor' . . . includes . . . consultants who represent that they are able

24   to supervise or manage a construction project for the property owner's benefit, including

25   hiring and firing specialty contractors, scheduling work on the project and selecting and

26   purchasing construction material.").  The Court has already found that "KNR was never a

---

[2] KNR does not dispute that it was an unlicensed contractor. (Docs. 146, 168.) Instead, KNR insists that "no license is implied in the issues before this Court." (Doc. 168 at 8.) As discussed herein, the Court disagrees; KNR's unlicensed status is not only a relevant issue but a dispositive one.

licensed contractor," and as an unlicensed contractor KNR cannot maintain its actions for breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment.  (Doc. 171 at 8); A.R.S. § 32-1153.

But even if KNR were properly licensed, summary judgment should still be denied for these claims for relief because, as explained in further detail below, the Court finds that genuine issues of material fact exist regarding the breach of contract and breach of implied covenant of good faith cross-claims.  The Court also find that the unjust enrichment cross-claim was improperly briefed.

### B.      Breach of Contract

Contracts consist of an offer, acceptance, consideration, and intent by the parties to be bound.  *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1153 (D. Ariz. 2016), *aff'd*, 705 F. App'x 539 (9th Cir. 2017).  "'To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages.'"  *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 96 (2013) (quoting *Graham v. Asbury*, 112 Ariz. 184, 185 (1975)).

KNR argues that Oddonetto was contractually obligated to deliver 25% of the granite countertops and sinks for the KOTA project after KNR sent the $78,200.00 payment.  (Doc. 146 at 4.)  It asserts that Oddonetto breached by not delivering any materials to KNR despite being paid $245,326.00.  (*Id.*)  KNR also argues that there is no dispute that Mr. Oddonetto told KNR that the materials were in port and that the materials could not be taken out of port until KNR made a second payment.  (Doc. 168 at 2.)  KNR also asserts that Oddonetto's claim that it only needed to purchase the stone on an as-needed basis is contradicted by the fact that Oddonetto asked for the full payment before supplying any stone. (*Id.* at 3–4.)  Finally, KNR argues that Oddonetto's ability to perform is not relevant to the breach of contract cross-claim because it is only relevant to mitigation of Dakota's damages.  (*Id.* at 4.)

Oddonetto argues its contractual obligations were determined by the October 4, 2018, estimate.  (Doc. 158 at 10.)  It asserts that the estimate contained "(1) no specific

timeframe for delivery of the stone materials for the KOTA Project; (2) no requirement that all stone materials had to be ordered at the time of the initial or final payment by KNR to Oddonetto [LLC]; and (3) no requirement that a specific quantity or all of the stone product would be ordered at one time after the payment from KNR." (*Id.*)  Oddonetto asserts that, consistent with its prior dealings with KNR, they agreed that it could acquire materials on an as-needed basis because it did not have enough space to store all the materials at once. (*Id.*)  Oddonetto finally argues that "because the terms understood by Mr. Oddonetto did not require all of the stone product to be purchased at once (even after full payment)," there can be no breach of express contract terms or the covenant of good faith and fair dealing or, at minimum, "the conflicting positions taken by the Parties shows that there is a disputed factual issue on whether a breach even occurred." (*Id.*)

The Court agrees with Oddonetto that the conflicting positions on the terms of the agreement—when and how much of the stone needed to be ordered, and the delivery timeframe—render the contract ambiguous and therefore, forecloses summary judgment. "In Arizona, the construction of ambiguous contract provisions is a jury question." *MDY Indus., LLC v. Blizzard Ent., Inc*., 629 F.3d 928, 956 n. 22 (9th Cir. 2010) (citing *Clark v. Compania, Ganadera de Cananea, S.A*., 94 Ariz. 391, 385 P.2d 691, 697–98 (1963)). Therefore, summary judgment on KNR's breach of contract cross-claim is denied. [3]

### C.    Breach of Implied Covenant of Good Faith and Fair Dealing

"[T]he duty of good faith and fair dealing . . . is implied in all contracts." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 174, 176 (1996). "The duty of good faith requires that neither party act in a manner that would damage the rights of the other party to receive the benefits flowing from the underlying contractual relationship." *Id.*

KNR argues that Oddonetto breached its duty by intentionally misrepresenting the amount of product it was buying and by not delivering the goods after being paid, per the

---

[3] The Court notes that Oddonetto also argues that the doctrine of frustration applies in this case. But neither party's briefing adequately addresses the issue. Oddonetto mentions frustration, but does not articulate arguments based on the clearly established test in *Next Gen Cap., L.L.C. v. Consumer Lending Assocs., L.L.C.*, 234 Ariz. 9, 11 (App. 2013). (Doc. 158 at 11–12.) For its part, KNR does not even address the issue in its Reply brief. (Doc. 168.) Accordingly, the Court will not address the doctrine of frustration in this Order.

terms of the parties' agreement.  (Doc. 146 at 4–5.)  Oddonetto argues that it complied with the terms of the agreement and did not violate its duty.  (Doc. 158 at 9–11.)  Additionally, Oddonetto argues that there exist issues of material fact regarding the terms of the agreement as evidenced by the parties' contrary positions on this issue.  (*Id.*)  KNR counters that there is no genuine dispute regarding the terms of the agreement.  (Doc. 168 at 2–4.)

As previously discussed, the contours of the agreement are contested.  *Supra* Section III.B.  If a jury finds Oddonetto's controverted facts to be true, then it did not breach its implied covenant of good faith and fair dealing because the agreement permitted its actions. If, however, a jury finds that KNR's controverted facts are true, then Oddonetto did violate its duty because Oddonetto's representations regarding the product at port were misleading. *See id.*  Determining the operative terms of the agreement is a question of material fact. *See id.*  Thus, summary judgment for KNR's breach of implied covenant of good faith and fair dealing cross-claim is denied.

### D.   Unjust Enrichment

"An unjust enrichment claim requires proof of '(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law.'"  *Perdue v. La Rue*, 250 Ariz. 34, 42 (App. 2020) (quoting *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318 (App. 2012)).

KNR's briefing lacks any reference to this established standard or any meaningful cites to the record.  (Doc. 146 at 5; Doc. 168 at 2–3, 5–6.)  Instead, KNR relies on general statements such as "[i]t would be unjust to allow Defendants Oddonetto to retain [a] benefit" from receiving the second payment of $78,000 "without paying for it." (Doc. 146 at 5.)  Summary judgment for KNR's unjust enrichment cross-claim is denied because its briefing on this issue is woefully underdeveloped and it has failed to meet its "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.

1

###### E.    Fraud

2      To prove fraud, a KNR must prove nine elements: "'(1) a representation; (2) its

3 falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth;

4 (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably

5 contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth;

6 (8) the hearer's right to rely on it; and (9) the hearer's consequent and proximate injury.'"

7 *Duncan v. Pub. Storage, Inc.*, 253 Ariz. 15, --- (App. 2022) (quoting *Comerica Bank v.*

8 *Mahmoodi*, 224 Ariz. 289, 291–92 (App. 2010)).

9      KNR makes a poor showing as to why summary judgment should be entered in its

10 favor with respect to its fraud cross-claim.  (Doc. 146 at 5–6.)  Rather than bearing its

11 burden and explaining why each element has been proven by the record to date, KNR states

12 conclusory assertions without much support.  (Doc. 146 at 5–6.)  Summary judgment

13 should be denied for this reason alone.

14      The Court, however, agrees with Oddonetto that there are genuine disputes of

15 material facts and summary judgment should be denied with respect to KNR's fraud claim.

16 Specifically, (1) whether Mr. Oddonetto made a false representation given the October 4,

17 2018 estimate; (2) whether KNR was aware of and agreed Oddonetto Granite could

18 purchase stone on an as-needed basis; and (3) whether Mr. Oddonetto intended to defraud

19 KNR when he sent the March 29, 2019 email.  (Doc. 158 at 13.)  Because the Court finds

20 that there are genuine disputes of material fact precluding summary judgment, it will not

21 discuss the parties' arguments regarding the economic loss rule.

22

###### F.    Common Law Indemnity

23      KNR requests that the Court grant conditional summary judgment on its common

24 law indemnity cross-claim.  (Doc. 146 at 7–12.)  However, KNR cites no authority from

25 this state, district, or circuit to support this Court entering an order for conditional summary

26 judgement in this case.  Moreover, KNR fails to explain how its request for conditional

27 summary judgment would differ from an ordinary request for summary judgment.  Indeed,

28 if the Court granted summary judgment on this issue, it would still be conditioned on

1    whether KNR is found liable to the plaintiff, Dakota, in this matter.  Having been presented

2    with no reason to grant conditional summary judgment and no argument distinguishing it

3    from summary judgment, the Court denies KNR's request for conditional summary

4    judgment.

5          **G.**        **John Oddonetto's Personal Liability**

6          In Arizona, an LLC's liability is solely the liability of the entity, and its owners are

7    generally shielded from liability.  *See* A.R.S. § 29-3304(A); *Arizona Tile, L.L.C. v. Berger*,

8    223 Ariz. 491, 496 (App. 2010) ("[D]irectors are not personally liable for [an LLC's] torts

9    unless they 'participate or have knowledge amounting to acquiescence or are guilty of

10   negligence in the management or supervision of the corporate affairs causing or

11   contributing to the injury.'") (quoting *Bischofshausen, Vasbinder, & Luckie v. D.W.*

12   *Jaquays Min. & Equip. Contractors Co.*, 145 Ariz. 204, 210–11 (App. 1985)).  KNR argues

13   one exception that serves as the sole basis for its piercing theory: fraud.  (Doc. 146 at 7;

14   Doc. 168 at 9–10.)   The Court denies summary judgment regarding John Oddonetto's

15   personal liability because the Court has denied summary judgment for KNR's fraud cross-

16   claim.  *Supra* Section III.E.

17         **H.**    **Oddonetto's Cross-Claims**

18         KNR also moves for summary judgment regarding Oddonetto's cross-claims

19   against KNR. (Doc. 146 at 12.) Oddonetto "does not object to summary judgment on the

20   cross-claim and does not intend to pursue those claims any further in the litigation."  (Doc.

21   158 at 4.)  Accordingly, summary judgement will be entered in favor of KNR with respect

22   to Oddonetto's cross-claims against it.

23   **IV.**    **CONCLUSION**

24         Accordingly,

25         **IT IS ORDERED** granting in part and denying in part Defendant KNR Contractor's

26   Motion for Summary Judgement and Conditional Summary Judgement Against

27   Defendants Oddonetto Granite & Marble LLC and John Oddonetto.  (Doc. 146.)

28         **IT IS FURTHER ORDERED granting** the Motion (Doc. 146) with respect to

1   Oddonetto's cross-claims. Summary judgment on Oddonetto's cross-claims shall be
2   entered in favor of KNR and Oddonetto's cross-claims shall be dismissed from this action.

3      **IT IS FINALLY ORDERED denying** the Motion (Doc. 146) with respect to
4   KNR's Breach of Contract (Count I), Breach of Implied Covenant of Good Faith and Fair
5   Dealing (Count II), Unjust Enrichment (Count III), Fraud (Count IV), and Common Law
6   Indemnity (Count V) cross-claims, as well as personal liability against Mr. Oddonetto.
7   Summary judgment shall not be entered with respect to those cross-claims.

8      Dated this 9th day of August, 2022.

9

10

11                   Michael T. Liburdi
12                   Michael T. Liburdi
                     United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28