**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| SPUS8 Dakota LP, et al., | No. CV-19-05477-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| KNR Contractors LLC, et al., | |
| Defendants. | |

The matter is before the Court on Defendants KNR Contractors LLC ("KNR"), John and Crystal Keener's (the "Keeners"),[1] Plaintiffs SPUS8 Dakota, LP and SPUS8 Pinnacle, LP's (collectively, "Dakota"), and Defendants Oddonetto Granite and Marble, LLC and John Oddonetto's (collectively, "Oddonetto") Motions for Summary Judgment (Docs. 194, 195, 198). The Court rules as follows.[2]

I.     **BACKGROUND**

The Court has previously laid out the factual background of this dispute and will only briefly reiterate it here. (Doc. 171 at 1-3; Doc. 220 at 1-4.) The claims at issue concern a contract dispute between the parties. Dakota owns a multi-family residential apartment complex in Scottsdale, Arizona, known as "Kota." (Doc. 171 at 1.) Dakota contracted with KNR to renovate Kota. (*Id.*) The renovation contracts set forth a commencement date of

---

[1] KNR Contractors, LLC and John and Crystal Keener are referred to collectively as "KNR" throughout unless individually referenced.

[2] The parties have submitted legal memoranda, and oral argument would not have aided the Court's decisional process. *See Patridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

September 10, 2018 and a completion date of September 10, 2022. (Doc. 117 at 3.) On October 2, 2018, Dakota paid KNR a total of $1,428,700.72 for a portion of the renovation materials. (Doc. 108 at 3.) While Dakota believed that KNR would source all the renovation materials from Chinese suppliers, KNR actually subcontracted with Oddonetto for granite countertops and sinks. (*Id.*)

A few months after KNR contracted with Oddonetto to procure, supply, and install the granite countertops and sinks for the Kota project, Dakota suspected that some of its ordered product was missing. (*Id.* at 3-4.) After disputes regarding payment between KNR and Dakota arose, KNR cancelled the renovation contracts on April 29, 2019. (*Id.*) After KNR cancelled the contracts, the renovation materials remained in its exclusive control and a final joint inventory of all the materials was conducted. (*Id.* at 4.) The inventory revealed that all of the granite countertops and sinks were missing. (*Id.*) In October of 2019, KNR and Dakota contacted Oddonetto to take inventory of the granite countertops and sinks, but Oddonetto stated that it did not have any of them prepared. (Doc. 220 at 2.) In the background, KNR Contractors LLC, a Texas LLC, had its right to transact business forfeited by the state of Texas on September 21, 2018. (Doc. 108 at 5.)

Dakota alleges that it is missing a total of $767,266.28 in pre-paid construction materials—inclusive of the $566,600 for the granite countertops and sinks. The Court previously granted summary judgment in Dakota's favor on its breach of contract claim against KNR – finding that KNR breached its contract with Dakota in so far as the granite countertops and sinks were not delivered and awarding Dakota $566,600 in money damages plus pre-judgment and post-judgment interest. (Doc. 171 at 10.) The Court also previously granted summary judgment in favor of KNR with respect to Oddonetto's cross-claims against it. (Doc. 220 at 10.)

## II.  LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255; *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) ("The court must not weigh the evidence or determine the truth of the matters asserted but only determine whether there is a genuine issue for trial."). That said, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment must "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). The Court has no independent duty "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). "[W]hen parties submit cross-motions for summary judgment, [e]ach motion must be considered on its own merits," but the Court must consider all evidence submitted in support of both cross-motions when separately reviewing the merits. *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal marks omitted).

## III.   DISCUSSION

### A.   KNR's Motion for Summary Judgment

KNR moves for summary judgment on Counts VII, IX, and X of Plaintiffs' Fourth Amended Complaint (the "Complaint"). (Doc. 194 at 2.) That is, KNR asks for summary

judgment on Dakota's "claims of fraud, fraudulent transfer, and piercing the corporate veil." (*Id.*) The Court rules on the motion as follows.

### i. Fraud

To maintain an action for fraud under Arizona law, "a plaintiff must sufficiently plead: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably calculated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to rely on it, and (9) a consequent and proximate injury." *Arnold & Assocs., Inc. v. Misys Healthcare Sys., a div. of Misys, PLC*, 275 F. Supp. 2d 1013, 1027 (D. Ariz. 2003) (citing *Nielson v. Flashberg*, 101 Ariz. 335, 338-39 (1966) (in division)). In determining whether the elements of fraud are present, "a court looks to the face of the complaint." *Id.* (citing *Stewart v. Phoenix Nat'l Bank*, 49 Ariz. 34, 41 (1937)). "[A]n action for damages cannot be maintained on the ground of fraud in refusing to perform the contract, even though the defendant at the time of making the oral contract may have had no intention of performing it." *Lininger v. Solenblick*, 23 Ariz. 266, 269 (Ct. App. 1975) (internal marks and citation omitted). Importantly, "breach of a contract is not fraud." *Trollope v. Koerner*, 106 Ariz. 10, 19 (1970).

KNR asserts that it committed no fraud and that Dakota cannot prove that its damages were caused by any fraud. (Doc. 194 at 4.)  KNR maintains that there is no evidence that it "ever had any knowledge of any falsity or intent to deceive [Dakota] with regard to any relevant issues or damages," and that there is "no causation." (*Id.* at 5.) Dakota counters that KNR made numerous false representations in inducing Dakota to contract with KNR for the renovation construction materials. (Doc. 207 at 9.) Specifically, Dakota states that it "would have never contracted with KNR but for the numerous representations regarding its national presence, size, license and experience." (*Id.*) But as the Court has previously found, there remains a factual dispute as to when KNR was on notice that its right to transact business in Texas had been forfeited. (Doc. 171 at 3.) The Court finds that this, coupled with Dakota's allegations of reliance, creates a genuine issue

of material fact for trial.

For the first time in its reply brief, KNR argues that the economic loss doctrine prevents Dakota from recovery on its claim for fraud. (Doc. 218 at 2.) The Court has no obligation to consider arguments raised for the first time in a reply brief and declines to do so here. *See e.g.*, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (holding that a "district court need not consider arguments raised for the first time in a reply brief") (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003)); *Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived."). Having failed to convince the Court of the absence of any genuine issues of material fact, KNR has not carried its burden with respect to Dakota's fraud claim.

### ii.   Fraudulent Transfer

The Keeners and Dakota have filed cross-motions for summary judgment on the fraudulent transfer claim.

Arizona has enacted the Uniform Fraudulent Transfer Act ("UFTA").[3] *See State ex rel. Indus. Comm'n of Ariz. v. Wright*, 202 Ariz. 255 (Ct. App. 2002). Under the UFTA, fraudulent transfers are divided into two subcategories: actual and constructive. *Hullett v. Cousin*, 204 Ariz. 292, 295 (2003). A transfer is constructively fraudulent if the debtor made it "without receiving a reasonably equivalent value in exchange" and "the debtor was insolvent at that time or became insolvent as a result of the transfer." A.R.S. § 44-1005. Claims of actual fraudulent transfer require a defendant to have acted with "actual intent." *See* A.R.S. § 44-1004(A)(1). Although not clearly articulating which subcategory it claims the Keeners violated, Dakota appears to allege both constructive and actual fraudulent transfer. (Doc. 123 at 16.) Dakota alleges that the funds it paid KNR were fraudulently transferred by the Keeners. (*Id.*)

As to its actual fraud claim, Dakota contends that the transfers were made "[w]ith an actual intent to hinder, delay, or defraud any creditor of the debtor[.]" (*Id.*) Here, Dakota

---

[3] Although Dakota seemingly alleges that the relevant transfers are violative of both Arizona's and Texas' version of the UFTA, Dakota narrows its analysis in subsequent briefing to the Arizona UFTA. In any event, the relevant standards are the same under both versions of the UFTA.

is required to present "clear and satisfactory evidence" of Defendants' fraudulent intent. *Gerow v. Covill*, 192 Ariz. 9, 17 (Ct. App. 1998). The UFTA provides eleven non-exclusive factors for courts to consider in determining whether there was fraudulent intent:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

A.R.S. § 44-1004(B). But these factors are not dispositive, and "a finding of 'actual intent' as a matter of law is appropriate only if the evidence presents no genuine issue of fact." *Airbus DS Optronics GmbH v. Nivisys LLC*, No. CV-14-02399-PHX-JAT, 2017 WL 1197105, at *9 (D. Ariz. Mar. 31, 2017) (citing *In Re Beverly*, 374 B.R. 221, 235 (9th Cir. BAP 2007) (noting "actual intent" under the UFTA is typically a question of fact)).

The Keeners summarily argue that they did not fraudulently transfer the money KNR received from Dakota because KNR paid Oddonetto in full for the procurement of the materials. (Doc. 194 at 8.) Dakota counters that it is still missing materials owed to it following its payment to KNR and that the Keeners "cleared out the KNR bank accounts following notice of the claim and lawsuit in October 2019." (Doc. 207 at 10.) Dakota contends that these transfers were made "with the actual intent to defraud[.]" (*Id.*) In support thereof, Dakota alleges that: [i] the transfer of funds was made from KNR to an insider – the Keeners; [ii] the Keeners retained sole possession and control of the funds; [iii] the transfer was made while KNR and the Keeners knew that they would be sued;

[iv] the transfer was for substantially all the remaining funds under the renovation contracts; [v] KNR was insolvent or became insolvent as a result of the transfer; [vi] the Keeners and KNR concealed the transfer of funds; and [vii] the transfer occurred shortly before or after a substantial debt was incurred by the Keeners for medical treatment. (Doc. 195 at 17-18; Doc. 207 at 10-11; Doc. 217 at 10-11.)

Neither party has met their burden on this issue. For their part, the Keeners fail to meaningfully dispute the claims that there was a fraudulent transfer from KNR to the Keeners. Instead, in their briefing, the Keeners merely recite identical language alleging that KNR paid Oddonetto in full for the procurement of materials. (Doc. 194 at 8; Doc. 205 at 13.) But as they correctly note, "actual intent" is usually a question of fact and making such a finding as a matter of law is only appropriate if the evidence presents no genuine issue of material fact. *See Airbus*, 2017 WL 1197105 at *9. Here, the Court finds that whether or not the Keeners had the actual intent to defraud is a genuine issue of material fact precluding summary judgment in their favor.

Dakota's request fares no better. As to its actual fraud theory, Dakota has not provided the Court with clear and satisfactory evidence of fraudulent intent. Viewing the evidence in the light most favorable to the Keeners, the Court again finds that it is not clear that the Keeners possessed the requisite intent to be liable under the actual fraud subcategory of fraudulent transfer. Dakota also fails to carry its burden on its constructive fraud theory. A claim for a constructively fraudulent transfer occurs when "an exchange lacks reasonably equivalent value and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer." *Hullett*, 204 Ariz. at 295. The brunt of Dakota's argument focuses on whether or not the Keeners had actual intent. As to its constructively fraudulent transfer claim, Dakota only summarily claims that the transfers were made without receiving reasonably equivalent value. The Court cannot accept unadorned summary recitations of elements as true. Therefore, the Court will deny Dakota's request for summary judgment on its fraudulent transfer claim.

### iii.     Piercing the Corporate Veil

Both KNR and Dakota request summary judgment in their favor on Count X of the Complaint: Piercing the Corporate Veil. (Doc. 194 at 9; Doc. 195 at 9.) On its end, KNR argues that Dakota cannot pierce the corporate veil "because KNR committed no fraud." (Doc. 194 at 9.) Once again, KNR merely maintains that it received funds from Dakota and subsequently paid Oddonetto in full. (*Id.*) Dakota argues that there is evidence of intermingling of corporate and personal assets and that corporate funds were used for other business ventures and personal purposes unrelated to KNR. (Doc. 195 at 10-11.)

The corporate veil refers to the "basic axiom of corporate law that a corporation will be treated as a separate entity unless there is sufficient reason to disregard the corporate form." *Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 214 (Ct. App. 2010). Generally, the corporate veil shields shareholders of a corporation from liability for the corporation's torts. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Similarly, the personal assets of corporate officers may not usually be reached to satisfy any corporate liabilities. *Loiselle*, 224 Ariz. at 214. But the corporate veil limiting this liability may be pierced in certain circumstances. *Bestfoods*, 524 U.S. at 62. Here, the contract between Dakota and KNR provides that the contract "shall be governed by the law of the place where the project is located, excluding that jurisdiction's choice of law rules." (Doc. 195-9 at 13.) The Kota project is located in Arizona. Therefore, Arizona law sets out the circumstances in which the corporate veil may be pierced.

Arizona law provides that the "corporate status will not be lightly disregarded." *Chapman v. Field*, 124 Ariz. 100, 102 (1979); *see also Mod. Pioneers Ins. Co. v. Nandin*, 103 Ariz. 125, 130 (1968) ("The concept of a corporation as a separate entity is a legal fact[,] not a fiction."); *Hidalgo v. McCauley*, 50 Ariz. 178, 183 (1937) ("Even when all the stock is owned by a sole shareholder, there seems no adequate reason to depart from the general rule that the corporation and its shareholders are to be treated as distinct legal persons."). Indeed, the corporate veil will be disregarded "only if there is sufficient evidence that [i] the corporation is the alter ego or business conduit of a person, *and* [ii]

disregarding the corporation's separate legal status is necessary to prevent injustice or fraud." *Loiselle*, 224 Ariz. at 214 (internal marks and citation omitted) (brackets and emphasis added). To show that a corporation is the alter ego of an individual, a plaintiff must show "substantial evidence of intermingling of corporate and personal assets, affairs or funds, or that the corporate structure was in any way used for other than legitimate corporate purposes." *Chapman*, 124 Ariz. at 103 (quoting *Ferrarell v. Robinson*, 11 Ariz. 473, 476 (Ct. App. 1970)).

Here, Dakota provides the Court with evidence of KNR intermingling its assets, funds, and affairs with those of the Keeners. (Doc. 195 at 6-9.) But Dakota stops short of meeting its burden. Dakota needs to show both that KNR was the alter ego of the Keeners and that a fraud or injustice would be perpetrated should the Court respect KNR's corporate entity. As to the latter, Dakota offers little evidence. Dakota maintains that it has shown fraudulent intent on behalf of the Keeners in that they "basically bled the bank accounts of KNR dry in December 2019 following notice of this lawsuit." (*Id.* at 11.) But as the Court noted above, there is a genuine issue of fact relating to the Keener's fraudulent intent. Dakota makes no further allegations of injustice or fraud as to its piercing the corporate veil claim. And evidence of intermingling alone is insufficient for the Court to pierce the veil. Thus, the Court cannot enter summary judgment in Dakota's favor on this claim. Because the Court finds that the question of the Keener's fraudulent intent creates a genuine issue of material fact, it declines to enter summary judgment in KNR's favor on the corporate veil claim as well.

### B.    Dakota's Motion for Summary Judgment on Conversion

Arizona law defines conversion as "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 208 Ariz. 140, 143 (Ct. App. 2004) (quoting *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 166 Ariz. 333, 335 (Ct. App. 1990)). For a plaintiff to prevail on a conversion claim, they "must have had the right to immediate possession of the personal property at the time of the alleged conversion." *Id.* "A conversion claim cannot be

maintained to collect on a debt that could be satisfied by money generally, but money can be the subject of a conversion claim if the money 'can be described, identified or segregated, and an obligation to treat it in a specific manner is established.'" *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1098 (D. Ariz. 2021) (quoting *Autoville, Inc. v. Friedman*, 20 Ariz. 89, 91-92 (Ct. App. 1973)).

Dakota argues that the funds it provided to KNR for the purchase of granite countertops and sinks are describable, identifiable, and were transferred with the obligation to treat them in a specific manner. (Doc. 195 at 16.) Dakota further maintains that the Keeners committed an act of wrongful dominion and control over the funds in that the granite countertops and sinks "should have been purchased but were never received[.]" (*Id.*) KNR responds by arguing that the economic loss doctrine precludes Dakota's conversion claim and requests summary judgment in its favor. (Doc. 205 at 10.) Alternatively, KNR argues that even if the doctrine is inapplicable to this context, there was no wrongful dominion or control as KNR transferred the funds to Oddonetto pursuant to its contractual obligations. (Doc. 205 at 11.)

As explained by the Supreme Court of Arizona, the economic loss doctrine is a "common law rule limiting a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property." *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 Ariz. 320, 323 (2010). The doctrine's purpose is "to encourage private ordering of economic relationships and to uphold the expectations of the parties by limiting a plaintiff to contractual remedies for the loss of the benefits of the bargain." *Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1050 (D. Ariz. 2010). But the doctrine does not bar all tort claims seeking only economic damages. *Id.* And "Arizona courts have typically limited the application of the [doctrine] to product liability and construction defect cases." *B2B CFO Partners, LLC v. Kaufman*, 856 F. Supp. 2d 1084, 1096 (D. Ariz. 2012) (citing *In re Gosnell Dev. Corp. of Ariz.*, 331 Fed. Appx. 440, 441 (9th Cir. 2009)). In cases where the doctrine has been applied outside those two contexts, the parties had detailed contracts allocating risk of loss and specifying

1   remedies. *See e.g.*, *Cook v. Orkin Exterminating Co., Inc.*, 227 Ariz. 331, 332 (Ct. App.

2   2011); *Sherman v. Premier Garage Sys., LLC*, No. CV-10-0269-PHX-MHM, 2010 WL

3   3023320, at *4 (D. Ariz. July 30, 2010).

4          KNR has failed to convince the Court that the economic loss doctrine bars Dakota's

5   conversion claim. Courts in this District generally decline extending the doctrine outside

6   the contexts of products liability and construction defects. *See e.g.*, *Kenneth Eisen &*

7   *Assocs., Ltd. v. CoxCom, Inc.*, No. CV-18-02120-PHX-JJT, 2019 WL 669770, at *2

8   (D. Ariz. Feb. 19, 2019) ("While the Court recognizes that the scope of the economic loss

9   rule is not crystal clear, little support exists for the argument that Arizona courts intend to

10  apply the rule outside the contexts they have already identified."); *Van Go LLC v. Potts*,

11  No. CV-16-00054-PHX-JJT, 2016 WL 4974968, at *4 (D. Ariz. June 7, 2016); *Kaufman*,

12  856 F. Supp. 2d at 1096. KNR has not provided the Court with cases in which an Arizona

13  court has applied the economic loss doctrine to a conversion claim, and this Court is not

14  free to expand the existing scope of state law without clear guidance from the state's

15  highest court. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008).

16  KNR provides only summary recitations of the economic loss doctrine and does not offer

17  any compelling arguments for extending the rule to bar Dakota's claim for conversion.

18         Dakota and KNR alike have also failed to meet their burden at the summary

19  judgment stage regarding the merits of the conversion claim. KNR argues the conversion

20  claim fails a matter of law because it alleges that it paid Oddonetto in full for the

21  procurement of the granite countertops and sinks. (Doc. 205 at 10.) Dakota alleges that the

22  granite countertops and sinks "should have been purchased but were never received." (Doc.

23  195 at 16.) Whether KNR paid Oddonetto in full for the procurement is a genuine issue of

24  fact. Thus, the Court declines to enter summary judgment for either party on Dakota's

25  conversion claim.

26         **C.    Oddonetto's Motion for Summary Judgment**

27         Oddonetto asks the Court to grant summary judgment on all of Dakota's claims and

28  KNR's cross-claims against it. (Doc. 198 at 2.) For the reasons articulated below,

1    Oddonetto's Motion will be granted in part and denied in part.

2        **i.    Dakota's Claims**

3        Dakota alleges five causes of action against Oddonetto: (i) negligence; (ii) negligent

4    misrepresentation; (iii) unjust enrichment; (iv) conversion; and (v) fraud. (Doc. 123 at 7–

5    14.) Oddonetto argues that Dakota's claims fail as a matter of law for a number of reasons.

6    (Doc. 198 at 3.) First, as to the fraud and negligent misrepresentations claims, Oddonetto

7    asserts that it never made a representation to Dakota at the time Dakota contracted with

8    KNR, and that "there is no evidence of justifiable reliance." (*Id.*) Second, as to the

9    negligence claim, Oddonetto argues that it owes no legal duty to Dakota and that Dakota

10   cannot show proximate cause. (*Id.*) Third, as to the unjust enrichment claim, Oddonetto

11   maintains that it was "not unjustly enriched when [Dakota] and KNR terminated their

12   contracts, and refused to allow [Oddonetto] to perform under its contract with KNR." (*Id.*)

13   Lastly, as to the conversion claim, Oddonetto claims that Dakota cannot establish the

14   material elements. (*Id.*)

15       **a.    Fraud and Negligent Misrepresentation**

16       To prevail on its claim for fraud, Dakota must prove: "(1) a representation, (2) its

17   falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth,

18   (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably

19   calculated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth,

20   (8) the right to rely on it, and (9) a consequent and proximate injury." *Arnold & Assocs.,

21   Inc. v. Misys Healthcare Sys., a div. of Misys, PLC*, 275 F. Supp. 2d 1013, 1027 (D. Ariz.

22   2003) (citing *Nielson v. Flashberg*, 101 Ariz. 335, 338-39 (1966) (in division)). Similarly,

23   under Arizona law, "negligent misrepresentation occurs when a person 'fails to exercise

24   reasonable care and competence in obtaining or communicating information and thereby,

25   in the course of his business or employment, provides false information for the guidance

26   of others.'" *In re Allstate Life Ins. Co. Litig.*, 971 F. Supp. 2d 930, 945 (D. Ariz. 2013)

27   (quoting *PLM Tax Certificate Program 1991-92, L.P. v. Schweikert*, 216 Ariz. 47, 50 (Ct.

28   App. 2007)). Thus, to prevail on a claim of negligent misrepresentation, a Plaintiff must

show the following elements: "(1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage." *James Erickson Fam. P'ship LLLP v. Transamerica Life Ins. Co.*, No. CV-18-04566-PHX-DWL, 2019 WL 4673337, at *6 (D. Ariz. Sept. 25, 2019) (quoting *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 333 (Ct. App. 1994)).

Dakota's fraud and negligent misrepresentation claims against Oddonetto fail as a matter of law. The parties agree that the relevant representation here is Mr. Oddonetto's statement that he would procure, cut, fabricate and subsequently install the granite countertops and sinks for the renovation project. (Doc. 123 at 15; Doc. 198 at 10; Doc. 208 at 4.) But for a representation to "constitute actionable fraud, it must relate to either a past or existing fact. It cannot be predicated on unfulfilled promises, expressions of intention or statements concerning future events unless such were made with the present intention not to perform." *Arnold*, 274 F. Supp. 2d at 1027 (quoting *Staheli v. Kauffman*, 122 Ariz. 380, 384 (1979)). This policy represents the fact that "a promise to perform in the future is not a representation which can be shown to be true or false at the time it was made, and therefore, a person has no right to rely, in a legal sense, on a representation of a fact not in existence." *Id.* (quoting *Denbo v. Badger*, 18 Ariz. 426, 428 (Ct. App. 1972)). Mr. Oddonetto's representation is a future promise to perform. And nowhere in its briefing does Dakota maintain that Mr. Oddonetto made the statement with the present intention not to perform. Thus, there is no actionable representation, and Dakota's fraud claim fails as a matter of law. For these same reasons, the negligent misrepresentation claim also fails. *See In re Allstate*, 971 F. Supp. 2d at 945 (citing *McAlister v. Citibank (Ariz.), a Subsidiary of Citicorp*, 171 Ariz. 207, 215 (Ct. App. 1992) ("A claim for negligent misrepresentation cannot be based on future promises; it must be premised on statements about past or present facts.")).

Even if the Court were to find the relevant representation actionable, Dakota's fraud and negligent misrepresentation claims necessarily fail. Dakota contends that it "relied upon the representation that Mr. Oddonetto would procure the granite and sinks, fabricate the granite and subsequently install the granite countertops and sinks as part of the apartment renovations." (Doc. 208 at 4.) Furthermore, it contends that it was "justified to rely on the contractual agreement between Oddonetto and KNR . . . combined with the verbal representations made that the product would be procured." (*Id.*) But nowhere in its Complaint or response to Oddonetto's Motion does Dakota allege that how it relied on Oddonetto's allegedly false and material representations. For a party to be said to rely on a representation, that party must act or refrain from acting based on the representation. *See IceMOS Tech. Corp.*, 2019 WL 5960069, at *7 (citing *Sw. Non-Profit Hous. Corp. v. Nowak*, 234 Ariz. 387, 395 (Ct. App. 2014)). Dakota argues that it relied on Mr. Oddonetto's representations in deciding to contract with KNR on September 12, 2018. But Dakota contracted with KNR before Oddonetto was even contacted by KNR. In its own factual summary, Dakota maintains that "[u]nbeknownst to [it] at the [time KNR represented that building material would be sourced from China], however, KNR contracted locally with Oddonetto to provide the granite countertops and sinks." (*Id.* at 12.) Furthermore, Dakota's Complaint provides that "some time *after* [Dakota] provided [KNR] with the checks totaling $1,428,610.72 for the first phase of the project, [KNR] subcontracted with [Oddonetto] for the slabs and sinks, *unbeknownst* to [Dakota.]" (Doc. 123 at 7) (emphasis added). It is unclear to the Court how Dakota could have relied on a representation made long *after* Dakota contracted with KNR in deciding to contract with KNR in the first place. The record does not contain any evidence showing any other action taken in reliance. As a result, Dakota cannot show that it justifiably relied on Oddonetto's representation. *See Sw. Non-Profit Hous. Corp.*, 234 Ariz. at 395 (reasoning that "[b]efore justifiable reliance can be found . . . there must be some evidence in the record of reliance"). For these reasons, the Court will grant summary judgment in Oddonetto's favor on Dakota's fraud and negligent misrepresentation claims.

### b.     Negligence

Oddonetto argues that the negligence claim fails as a matter of law because Dakota cannot show the existence of a duty and proximate causation. (Doc. 198 at 12-13.) Dakota counters that Oddonetto assumed a legal duty by entering a contractual relationship with KNR, and that Oddonetto owed a legal duty to Dakota despite the lack of privity between the two. (Doc. 208 at 6.)

In Arizona, a plaintiff seeking to establish a negligence claim must show: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *Gipson v. Kasey*, 214 Ariz. 141, 143 (2007). The question of duty is a threshold matter of law for the Court to decide. *Id.* "Absent some duty, an action for negligence cannot be maintained." *Id.* A duty is "an obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Markowitz v. Ariz. Parks. Bd.*, 146 Ariz. 352, 354 (1985) (internal citation omitted). In Arizona, legal duties are based "either [on] special relationships or on public policy." *Cal-Am Properties Inc. v. Edais Eng'g Inc.*, 253 Ariz. 78, 509 P.3d 386, 389 (Ariz. 2022) (citation omitted). Special relationships giving rise to a duty in negligence include "those formed by contract, familial relationship, or joint undertaking." *Id.* Duties based on these special relationships require "a preexisting, recognized relationship between the parties." *Id.* at 390. Importantly, "although liability for a joint undertaking may exist despite a lack of privity between two parties . . . no liability exists where . . . parts of an overall enterprise were organized by another entity and the defendant's relevant undertaking was with and for that entity." *Id.*

Here, no contractual or familial relationship exists between Dakota and Oddenetto. And "although liability for a joint undertaking may exist despite a lack of privity between two parties, this concept necessarily involves conduct a defendant undertook *directly* with or for a plaintiff." *Id.* (emphasis in original). Dakota maintains that Oddenetto owed it a legal duty based on this joint-undertaking theory. (Doc. 208 at 6.) It argues that Oddenetto

"assumed a duty by entering into a contractual relationship with KNR to receive [Dakota's] funds and procure and install the granite and sinks for [Dakota's] direct benefit." (*Id.*) But that is a leap too far. In *Cal-Am Properties*, the Arizona Supreme Court held that a subcontractor lacking privity of contract with the project owners did not owe a duty to those owners – reasoning that the subcontractor's relevant undertaking was with the general contractor. 509 P.3d at 390. The Court finds the same here. Dakota contracted with KNR, and KNR subsequently contracted with Oddonetto. This created two separate contracts. That Oddonetto's services would have indirectly benefitted Dakota does not give rise to a legal duty for purposes of a negligence claim.[4] Without a legal duty, Dakota's negligence claim fails. Therefore, the Court will enter summary judgment in favor of Oddonetto on Dakota's negligence claim.[5]

### c.    Unjust Enrichment

To prevail on an unjust enrichment claim, a plaintiff must allege: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment; and (5) an absence of a remedy provided by law." *Perez v. First Am. Title Ins. Co.*, 810 F. Supp. 2d 986, 991 (D. Ariz. 2011) (quoting *Freeman v. Sorchych*, 226 Ariz. 242, 245 (Ct. App. 2011)). "A claim for unjust enrichment may exist where a person confers a benefit to his detriment on another and allowing the other to retain that benefit would be unjust." *Baughman v. Roadrunner Commc'ns, LLC*, No. CV-12-565-PHX-SMM, 2014 WL 3955262, at *4 (D. Ariz. Aug. 13, 2014) (citing *USLife Title Co. of Ariz. v. Gutkin*, 152 Ariz. 349, 354 (Ct. App. 1986)). Arizona law provides that unjust enrichment is a "flexible equitable remedy which is available whenever the court finds that the defendant . . . is obliged by the ties of natural justice and equity to make compensation for

---

[4] The Court notes that this reasoning follows the approach of the Third Restatement of Torts which explains that when a project owner such as Dakota is harmed due to a subcontractor's negligence, it "is viewed just as a failure in the performance of [the subcontractor's] obligations to its contractual partner, not as a breach of duty in tort to . . . the owner of the project." Restatement (Third) of Torts § 6 cmt. b; *see also Cal-Am*, 509 P.3d at 391-92 (applying the Third Restatement of Torts).

[5] Because the Court finds that Oddonetto did not owe a legal duty to Dakota, it does not reach the parties' causation arguments.

- 16 -

the benefits received." *Hannibal-Fisher*, 523 F. Supp. 3d at 1097 (cleaned up). A party may properly allege an unjust enrichment claim "in the alternative even if they are alleging the existence of a contract governing the dispute." *Id.* (citing *Isofoton, S.A. v. Giremberk*, No. CV-04-0798-PHX-ROS, 2006 WL 1516026, at *3 (D. Ariz. May 30, 2006)).

Oddonetto argues that the unjust enrichment claim fails because Dakota prevented it from performing and completing the installation of the kitchens and countertops and that Dakota cannot show an absence of a remedy provided by law. (Doc. 198 at 14.) Dakota counters that there was a monetary contingency to Oddonetto's claims that it was always willing and able to complete the work. (Doc. 208 at 8.) Further, Dakota maintains that it has no adequate remedy at law given the lack of a contractual relationship between itself and Oddonetto. (*Id.*)

Although Dakota may have a contractual remedy against KNR, no such remedy exists against Oddonetto. The element of an unjust enrichment claim requiring an absence of a remedy provided by law refers to a legal remedy "against the same person from whom relief in equity is sought." *Loiselle*, 224 Ariz. at 211 (collecting cases). Therefore, Oddenotto's contention that the contractual remedy against KNR precludes Dakota's maintenance of an unjust enrichment claim is not well taken. The Court also finds that the allegations surrounding the monetary contingency preclude summary judgment because they create a genuine dispute of material fact. Namely, whether Oddonetto allegedly failed to complete the work on the project because it refused to perform unless it received an additional $515 per unit on top of the original payment. This factual dispute goes directly to the issue of whether the enrichment was unjust and whether there was an absence of justification. As such, the Court finds that summary judgment is not warranted in Oddonetto's favor on Dakota's unjust enrichment claim.

### d.    Conversion

Arizona law defines conversion as "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp.*, 208 Ariz. at 143 (quoting *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 166 Ariz. 333,

335 (Ct. App. 1990)). For a plaintiff to prevail on a conversion claim, they "must have had the right to immediate possession of the personal property at the time of the alleged conversion." *Id.* "A conversion claim cannot be maintained to collect on a debt that could be satisfied by money generally, but money can be the subject of a conversion claim if the money 'can be described, identified or segregated, and an obligation to treat it in a specific manner is established.'" *Hannibal-Fisher*, 523 F. Supp. 3d at 1098 (quoting *Autoville, Inc. v. Friedman*, 20 Ariz. App. 89, 91-92 (1973)).

Oddonetto contends that Dakota did not have the right to immediate possession of the specific funds, that the funds are not identifiable chattel because Dakota failed to segregate the specific amounts, and that the conversion claim is nothing more than an extension of Dakota's breach of contract claim against KNR. (Doc. 198 at 16-17.)  The Court agrees. The Complaint states that KNR paid Oddonetto "from the $1,428,610.72 [Dakota] had provided to [KNR] for the purpose of completing the renovation project." (Doc. 123 at 7.) Missing from this claim is any evidence that specific funds were to be treated in a specific manner. Providing KNR with the funds for the general purpose of completing the project does not provide the requisite specificity. There is nothing in the record indicating the treatment of those funds as specifically designated for the purchase of granite countertops and sinks from Oddonetto.

Second, assuming that the funds were specifically segregated and transferred with the obligation to treat them in a certain matter, Dakota is not the proper plaintiff to assert a claim of conversion. *See Universal Mktg. & Ent., Inc. v. Bank One of Arizona, N.A.*, 203 Ariz. 266, 268 (Ct. App. 2002) (holding that a proper plaintiff is the one with the right to immediate possession of the chattel at the time of the alleged conversion). As previously discussed, Dakota contracted with KNR, not Oddonetto. It was KNR who subsequently contracted with Oddonetto for the procurement, supply, and installation of granite countertops and sinks for the project and KNR made the relevant payment of funds pursuant to its contract with Oddonetto. (Doc. 220 at 2.) KNR, therefore, would have had the right to immediate possession at the time of the alleged conversion. Dakota fails to

convince the Court otherwise. Dakota asserts that the conversion occurred upon some unspecified "due date." (Doc. 208 at 10.) But merely contending that Oddonetto had immediate possession at the time of the conversion and that it should have returned the funds or produced the granite does nothing to further the inquiry as to whether Dakota had a right to immediate possession. Dakota fails to explain how at any time they would have had a right to immediate possession of the relevant funds. As a result, Dakota cannot prevail on its conversion claim. For these reasons, the Court will enter summary judgment in favor of Oddonetto on Dakota's conversion claim.

### ii.    KNR's Cross-Claims

KNR asserts cross-claims against Oddonetto for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud, and common law indemnity. (Doc. 19 at 16-19.) Oddonetto argues that KNR's cross-claims fail as a matter of law because: "Ariz. Rev. Stat. § 32-1153 bars all of KNR's claims . . . [;] KNR's termination of its contracts with Plaintiffs discharged [it] from performance under the doctrine of frustration of purpose/impossibility; [] the unjust enrichment claim is barred because KNR has other remedies at law; [] the fraud claim is barred by the economic loss rule; [] the common law indemnity claim fails due to KNR's active negligence; and [] Mr. Oddonetto is not personally liable for the obligations of [Oddonetto LLC]." (Doc. 198 at 3.) For the following reasons, the Court grants summary judgment in Oddonetto's favor as to KNR's cross-claims.

### a.    Ariz. Rev. Stat. § 32-1153

In relevant part, Ariz. Rev. Stat. § 32-1153 provides that no contractor may "commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required." Arizona law defines the term contractor to include any person or entity who "represent[s] that they are able to supervise or manage a construction project for the property owner's benefit, including hiring and firing specialty contractors, scheduling work on the project and selecting and purchasing construction material." A.R.S. § 32-1101(A)(3)(b). Arizona courts "have

- 19 -

repeatedly held that the purpose of § 32-1153 is to protect the public from unscrupulous, unqualified, and financially irresponsible contractors." *Aesthetic Prop. Maint. Inc. v. Capitol Indem. Corp.*, 183 Ariz. 74, 77 (1995).

KNR argues that it can maintain these cross-claims because the claims "in no way implicate[] the licensing statute" and are not "conditioned upon a contractor's license." (Doc. 204 at 4.) The Court disagrees. KNR's unlicensed status is not only a relevant issue, but a dispositive one. As the Court has previously explained, "[p]art of a general contractor's role is to pay for product, labor, or materials from a supplier or subcontractor in order to complete a construction job." (Doc. 220 at 5) (citing A.R.S. § 32-1101(A)(3)(b)). As Oddonetto notes, all of the claims asserted in the cross-claim seek recovery of the funds paid by KNR to Oddenetto for the purchase of construction materials. This recovery of funds falls squarely within a straight-forward application of the role played by a general contractor as described by Arizona law. It is uncontroverted that KNR was never a licensed contractor in Arizona. (*See* Doc. 106 at 6; Doc. 118 at 5.) KNR is an unlicensed contractor seeking to maintain an action for the recovery of funds directly related to the purchase of construction material. As a result, the Court finds that a textual application of § 32-1153 bars all of KNR's cross-claims. Thus, the Court will enter summary judgment in favor of Oddonetto as to all of KNR's cross-claims.[6]

///
///
///
///
///
///
///
///
///

---

[6] Because the Court finds sufficient support to grant summary judgment on these grounds, no analysis of the underlying merits of the cross-claims is necessary.

1   **IV.    CONCLUSION**

2           Accordingly,

3           **IT IS ORDERED denying** Defendants KNR's and John and Crystal Keener's

4   Motion for Summary Judgment Re: Counts VII, IX, and X of Plaintiffs' 4th Amended

5   Complaint (Doc. 194).

6           **IT IS FURTHER ORDERED denying** Plaintiffs' Motion for Summary Judgment

7   to Pierce the Corporate Veil of KNR Contractors, LLC, Conversion, and Fraudulent

8   Transfer of Funds (Doc. 195).

9           **IT IS FURTHER ORDERED granting** Oddonetto Defendants' Motion for

10  Summary Judgment on: (1) Plaintiff's Claims in the Fourth Amended Complaint; and (2)

11  Cross-Claimant KNR Contractors' Cross-Claim (Doc. 198) with respect to Dakota's

12  claims of fraud, negligence, and conversion and KNR's cross-claims. The Motion (Doc.

13  198) is **denied** in all other respects.

14          Dated this 16th day of November, 2022.

15

16

17                                          Michael T. Liburdi
                                            United States District Judge
18

19

20

21

22

23

24

25

26

27

28